UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2015 FEB 10 AM 9 57

STEPHAN HARRIS, CLERK
CHEYENNE

MANAGEMENT NOMINEES, INC.,

Plaintiff,

v.

Case No. 13–CV–140–ABJ

ALDERNEY INVESTMENTS, LLC.,

Defendant.

---

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff's *Motion for Partial Summary Judgment* [Doc. 34] and *Motion for Preliminary Injunction* [Doc. 37], Defendant's opposition thereto [Doc. 46 and 47] and Plaintiff's further reply regarding its motion for summary judgment [Doc. 67] have come before the Court for consideration. Having considered the pleadings, the applicable law, the parties' written submissions, and materials offered in support of their respective positions, the Court FINDS and ORDERS as follows:

1. **Background**

    a. **Facts**

The individuals involved in this proceeding are all Polish citizens and related to Rudolph Skowronska (Rudolph). Rudolph was a Polish businessman who disappeared in 2005. He is married to Edyta Skowronska (Edyta) and they have two minor children. Rudolph's half-sister, Dagmara Skowronska (Dagmara) is married to Rico Sieber. This case concerns Edyta's and

Management Nominees, Inc.'s (Belize) (MNI), owned by Rico Sieber, competing claims of ownership of Alderney Investments, LLC, (Alderney), a Wyoming limited liability company.

Alderney was organized in 1999. [Doc. 34, Exhibit 16, pg. 14.] The Articles of Organization list Luis A. Davis, Pamela D. Hall, Silvia Clarke, and Morgan Secretarial Services, Inc. as the original managers. [Doc. 34, Exhibit 16, pgs. 18, 19.] It is not clear from the record who, Rudolph or another person, made the decision to create Alderney.[1] The original members of Alderney were Management Nominees, Inc., a Panama Corporation, and Nominees Associated Inc. [Doc. 34, Exhibit 17, pgs. 9, 10.]

In 1999, Rudolph transferred ownership of Alderney to Dagmara. [Doc. 62, Exhibit 1, pg. 111.] Following this transfer, Alderney members, Management Nominees, Inc. (Panama) and Nominees Associated, executed a declaration of trust in which they declared that all rights, titles, investments in and to shares of Alderney are held in trust by them for UEB Services, LTD, Douglas, Isle of Man. [Doc. 34, Exhibit 17, pg. 16.] Then in 2000, UEB entered into a trust agreement with Dagmara that stated that UEB declared to "hold and have held the [rights], titles, and interests [in and to the shares of Alderney] in trust for Mrs. SKOWRONSKADagmara." [Doc. 34, Exhibit 17, pg. 17.]

In 1999 and again in 2001, the Alderney managers voted and approved of giving Dagmara power of attorney over Alderney. [Doc. 34, exhibit 17, pgs. 14, 15.] The 1999 manager meeting minutes state that Dagmara shall be granted a general power of attorney "with the right to sign individually." [Doc. 34, Exhibit 17, pg. 15.] The 2001 manager meeting minutes state that Dagmara shall be granted power of attorney "authorizing her to be Alderney's

---

[1] The identity of the individual who created Alderney or gave the instruction to create Alderney is not a genuine issue of material fact.

2

Attorney at Law with the right to sign individually on behalf of the company and represent the same in front of all courts, plaintiff, defendant, third [p]arty, or in any other form, for any proceedings. . ." The power of attorney document, signed by Luis A. Davis, grants Dagmara with the right to sign individually as follows:

> To purchased, alienate, transfer, sell, lease, pledge, mortgage, encumber, or dispose of in any way or manner, the movable or immovable, corporeal or incorporeal, property of the corporation, to accept, endorse, collect, deposit and transfer checks, notes and any other negotiable instruments in its name; to open and manage any kind of banking account, to draw from accounts and banking account, be they checking accounts, time deposits or against overdraft or any other kind of deposits. To issue notes, signs bills of exchange as a drawer, acceptor, endorser or guarantor; accept obligations, be they of a commercial or civil nature, to represent the corporation in matters of disposition and administration as well as in all affairs of management and situations in which the corporation has an interest, also in general partnerships or joint ventures; to buy stock or shares of any kind in other companies, to take part in Assemblies or meetings in order to make any kind of agreements, including agreements of constitution, transformation, increase of capital and dissolution of companies; to become the legal representative of the company, as plaintiff, defendant, third party in any other form, be they judicial, administrative, concerning labor, or any other nature; to substitute this power in whole or in part and to revoke the substitutions' to subscribe documents wherein they corporation may be involved, as a debtor or creditor; to make arrangements whatsoever and to complete any act or to enter into any contract that it be considered beneficial to the interests of the company because it is the intention of this General Power of Attorney that it be exercised whithout [sic] any limitations whatsoever.

[Doc. 46, Exhibit 9.] In 2003, Dagmara granted her ownership interest in Alderney to her husband, Rico Sieber. [Doc. 34, Exhibit 12, pg. 2.] Dagmara, however, retained her power of attorney for Alderney.

According to Defendant, in 2005, through her power of attorney, Dagmara transferred 90% ownership in Alderney to Edyta and her minor children through an "Agreement Regarding the Ownership of the Alderney Company" (transfer agreement). [Doc. 46, Exhibit 5.] Dagmara disputes that this transfer occurred and disputes that it is her signature on the transfer agreement. Dagmara, however, is not a named party to this action.

In 2010, pursuant to the alleged transfer, Edyta, either individually or through her agents, began filing new documents regarding Alderney with the Wyoming Secretary of State. Between 2010 and 2013, Edyta changed the name of Alderney's registered agent numerous times, she also changed the names of the managers, Alderney's principal address, and amended Alderney's Articles of Organization. [Doc. 34, Exhibit 15.] Management Nominees attempted to file cross-filings with the Secretary of State rebutting Edyta's authority to file documents on behalf of Alderney. [Doc. 34, Exhibit 15.] In the midst of all these filings and cross-filings, in 2012, Management Nominees, Inc. (Panama) and Nominees Associated, Inc. transferred their membership interests to Management Nominees, Inc. (Belize). [Doc. 1, Exhibit 1, pgs, 1 and 39.] Eventually, on March 22, 2013, Edyta filed Articles of Dissolution for Alderney with the Wyoming Secretary of State. [Doc. 34, Exhibit 15.] Alderney was dissolved by the Wyoming Secretary of State on March 22, 2013. [Doc. 34, Exhibit 15.]

It is not clear from the record whether Alderney is a member-managed or a manager-managed LLC under Wyoming Statute section 14-29-407. This is not a material question of fact, but is relevant to the creation of the power of attorney at issue. The LLC Articles of Organization state, "The Company is to be managed *initially* by the following managers/directors: Luis A. Davis, Pamela D. Hall, Silvia Clarke, Morgan Secretarial Services, Inc." [Doc. 34, Exhibit 17, pg. 6 (emphasis added).] The LLC agreement states, "Management of all of the affairs of the Company shall be vested in its Members. The Directors/Officers will be designated and removed by the Members." [Doc. 37, Exhibit 4, pg. 30.] The managers created and voted on Dagmara's power of attorney in 1999 and 2001. From the excerpts identified above in the Articles of Organization and LLC Agreement, the Court finds that Alderney was initially manager-managed, specifically during the times the managers created

Dagmara's power of attorney. It seems, however, the creators intended Alderney to be member-managed. It is not clear from the record whether the LLC became member-managed after 2001.

### a. Parties' arguments and procedural history

Plaintiff alleges that it is the sole member of Alderney. It contends Rico Sieber was the beneficial owner of the two original members of Alderney and is currently the beneficial owner of Alderney and its sole member, MNI. Plaintiff further alleges Edyta misrepresented to the Wyoming Secretary of State that she owned 90% of Alderney, and although unauthorized to do so, Edyta dissolved Alderney. Plaintiff contends that Edyta does not own Alderney and is not a member of Alderney.

In response, Defendant argues that Edyta had the authority to dissolve Alderney because she and her minor children own 90% of Alderney pursuant to the August 30, 2005 transfer made to them by Dagmara via her power of attorney for Alderney. Dagmara disputes that she signed the August 2005 transfer of ownership interest in Alderney to Edyta and her minor children.

On July 12, 2013, MNI filed a complaint asserting the following causes of action: (1) declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*; (2) a direct action claim of a member against a limited liability company pursuant to Wyoming Statute section 17-29-901; and (3) a request for injunctive relief. On August 7, 2014, MNI filed a *Motion for Partial Summary Judgment* on count one of its Complaint, Declaratory Judgment, pursuant to Rule 56(c), Fed.R.Civ.P. Also on August 7, 2014, MNI filed a *Motion for Preliminary Injunction* as an alternative method of relief if the Court did not grant its *Partial Motion for Summary Judgment*.

On August 28, 2014, Defendant filed an *Objection to Plaintiff's Motion for Partial Summary Judgment* and an *Objection to Plaintiff's Motion for Preliminary Injunction.* In its objection to the *Motion for Partial Summary Judgment*, Defendant asserts two arguments. One

5

of which is that summary judgment is not appropriate because at the time of the filing, considerable discovery remained to be completed. Defendant specifically argued that it needed time to take a 30(b)(6) deposition of Dagmara, and depositions of Alderney's directors, Luis A. Davis and Pamela D. Hall. Since its filing, Defendant took a 30(b)(6) deposition of Dagmara on November 13, 2014, and filed a *Supplemental Objection to Defendant's Objection to Motion for Partial Summary Judgment*. [Doc. 62.] The bench trial in this matter is scheduled to start in roughly three weeks, and the Court is not aware of any outstanding discovery disputes. As such, the Court will not consider Defendant's arguments regarding incomplete discovery in this Order as the issue seems to have been resolved.

### 2. Discussion

#### a. Standard of review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving

party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

### b. Ownership of Alderney

Defendant argues that there exists one genuine issue of material fact: whether Dagmara signed the August 2005 transfer agreement transferring 90% ownership in Alderney to Edyta and her minor children. Plaintiff argues that whether Dagmara had authority to transfer ownership interests under the power of attorney is a question of law. Plaintiff contends that Dagmara did

not have authority under the power of attorney to transfer ownership interests in Alderney because ownership interests belong to members and Dagmara only had authority to exercise control over Alderney, not the members. Further, Plaintiff argues that because Dagmara did not have authority to make a transfer of ownership interests, it is immaterial whether she signed the August 2005 transfer agreement.

Alderney LLC is an unusually organized LLC comprised of members and a multiple level trust relationship that ends with an ultimate beneficial owner. Defendant made it clear that Edyta's only claim to ownership of Alderney is through the transfer agreement executed pursuant to Dagmara's power of attorney. Regardless of the confusing organization, the Court agrees with Plaintiff that the dispositive issue regarding the current ownership of Alderney is whether Dagmara had the authority pursuant to the power of attorney to transfer ownership interests in Alderney. "Powers or letters of attorney are construed in accordance with the rules as to the interpretation of written contracts generally." 2A C.J.S. Agency § 143, power of attorney and Construction (Dec. 2014). Accordingly, the Court will turn to the law of contract interpretation and powers of attorney.

Questions of contract interpretation are questions of law. *Fayard v. Design Comm. of Homestead Subdivision*, 2010 WY 51, ¶ 19, 230 P.3d 299, 304 (Wyo. 2010) (In a case about roads within a subdivision, the Wyoming Supreme Court stated that whether "an 'unusual condition' can be created by conditions outside of the subdivision is a question of contract interpretation and, therefore, a question of law."). Neither party asserts that the power of attorney document is ambiguous. After reviewing the power of attorney document and giving the words their clear and ordinary meaning, the Court finds that the power of attorney is unambiguous.

Parties disagree on the breadth of the power of attorney. Defendant relies on the following language for its argument, ". . . it is the intention of this General power of attorney that it be exercised whithout [sic] any limitations whatsoever." [Doc. 46, Exhibit 9.] Defendant argues that this language is broad enough to allow Dagmara to transfer members' ownership interests. Plaintiff recognizes that the grant of power of the attorney is broad, but contends that Dagmara's power is limited to power over the LLC, which under Wyoming law is separate from the members' ownership interests.

The rules of contract interpretation require the Court to "interpret a contract as a whole, reading each provision in light of all the others to find their plain meaning." *Star Valley Ranch Ass'n v. Daley*, 2014 WY 116, ¶ 23, 334 P.3d 1207, 1213 (Wyo. 2014). As demonstrated below throughout the text, the power of attorney document references the company or corporation throughout:

> To purchased, alienate, transfer, sell, lease, pledge, mortgage, encumber, or dispose of in any way or manner, the movable or immovable, corporeal or incorporeal, **property of the corporation**, to accept, endorse, collect, deposit and transfer checks, notes and any other negotiable instruments **in its name**; to open and manage any kind of banking account, to draw from accounts and banking account, be they checking accounts, time deposits or against overdraft or any other kind of deposits. To issue notes, signs bills of exchange as a drawer, acceptor, endorser or guarantor; accept obligations, be they of a commercial or civil nature, **to represent the corporation** in matters of disposition and administration as well as in all affairs of management and **situations in which the corporation has an interest**, also in general partnerships or joint ventures; to buy stock or shares of any kind in other companies, to take part in Assemblies or meetings in order to make any kind of agreements, including agreements of constitution, transformation, increase of capital and dissolution of companies; to become the **legal representative of the company**, as plaintiff, defendant, third party in any other form, be they judicial, administrative, concerning labor, or any other nature; to substitute this power in whole or in part and to revoke the substitutions' to subscribe documents **wherein the corporation may be involved**, as a debtor or creditor; to make arrangements whatsoever and to complete any act or to enter into any contract that it be considered beneficial to **the interests of the company** because it is the intention of this General Power of Attorney that it be exercised whithout [sic] any limitations whatsoever.

[Doc. 46, Exhibit 9.] The Court must read the broad language identified by Defendant in light of the document as a whole. The power of attorney consistently references the company's or corporation's property or interest, not the members' or owners' interests. Under Wyoming law, powers of attorney are to be strictly construed. *Luikart v. Boland*, 45 Wyo. 461, 467-468, 21 P.2d 542, 543 (Wyo. 1933) ("It is the policy of the law to construe powers of attorney strictly, and to hold the principal not bound unless the authority is exercised within the undoubted limits prescribed by the principal."). Reviewing the power of attorney document as a whole, the Court agrees with Plaintiff that Dagmara's power of attorney is limited to the LLC itself, not the members or their ownership interests.

Further, the Court agrees with Plaintiff that an LLC is an entity that is separate and distinct from its members. WYO. STAT. § 17-29-104; *Kaycee Land & Livestock v. Flahive*, 2002 WY 73, ¶ 4, 46 P.3d 323, 325 (Wyo. 2002); *GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 2014 WY 144, ¶ 12, 337 P.3d 454, 459 (Wyo. 2014). The power of attorney was granted by the LLC for the LLC and does not refer to or mention Dagmara's ability to divest the members of their legal ownership interest or divest a beneficial owner of his or her equitable ownership.

The Court believes a comparison may be helpful in this instance. The Court finds that the power of attorney gave Dagmara similar powers to a director or a manager of an LLC.[2] Under Wyoming law, a manager cannot make certain decisions without first consulting with the members of the LLC. WYO. STAT. § 17-29-407. Moreover, Section 17-29-407 only vests managers with rights related to the LLC activities pursuant to the statute and the LLC Operating

---

[2] Wyo. Stat. § 17-29-102 (x) "'Manager' means a person that under the operating agreement of a manager-managed limited liability company is responsible, alone or in concert with others, for performing the management functions stated in W.S. 17-29-407(c)."

Agreement. Section 17-29-407 does not even consider the possibility of a manager being able to transfer a member's interests. *Id.* Furthermore, just for the sake of comparison, in this case, the operating agreements states that a member of Alderney may assign all or part of his LLC interest in the Company only with the consent of all other members. [Doc. 37, Exhibit 4, pg. 17.]

To this end, by strictly construing the power of attorney as a whole, the Court finds that the power of attorney grants Dagmara powers related solely to the LCC, not the members or owners. Because Dagmara had limited authority under the power of attorney, the Court finds that she did not have authority to grant Edyta and her minor children 90% ownership in Alderney. Thus, the alleged 2005 transfer is not valid, regardless of whether Dagmara signed it.

Defendant mistakenly focuses on Dagmara's ownership at the time the POA was granted, in 1999. Dagmara's ownership in 1999 is not material to whether, in 2005 as a non-owner, Dagmara had authority to transfer an ownership interest to Edyta and her minor children. Had Dagmara been a beneficial owner or a member at the time of the alleged transfer, the transfer would have been valid. This, however, is not the case. Plaintiff asserts and Defendant does not dispute that in 2005, when the transfer from Dagmara to Edyta allegedly occurred, that Management Nominees, Inc. (Panama) and Nominees Associated, Inc. were the members and legal owners of Alderney and Rico Sieber was the beneficial owner and equitable owner of Alderney.[3] Dagmara had no ownership interest to transfer to Edyta in 2005. As such, the Court

---

[3] Beneficial owner is defined by Black's Law Dictionary as "1. One recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else; esp. one for whom property is held in trust — Also termed *equitable owner*. 2. A corporate shareholder who has the power to buy or sell the shares, but who is not registered on the corporation's books as the owner." Black's Law Dictionary, 1130 (7th Ed.1999) (emphasis added).

finds, as a matter of law, that Edyta and her minor children do not have ownership interests in Alderney under the 2005 transfer and Dagmara's power of attorney.

Edyta based all of her actions on behalf of Alderney between 2005 to present on her alleged 90% ownership interest. Under Wyoming Statute section 17-29-203, a record delivered to the Secretary of State for filing shall be signed by a person authorized by the company. WYO. STAT. § 17-29-203. Because Edyta did not have an ownership interest or any other interest in Alderney, she and her agents were not properly authorized by Alderney to sign and file documents on Alderney's behalf, including the dissolution filings.

### c. MNI's legal ownership of Alderney

The Alderney Articles of Organization includes two member certificates, one for Management Nominees, Inc. (Panama) and one for Nominees Associated, Inc. [Doc. 34, Exhibit 17, pgs. 9 and 10.] In September 2012, Management Nominees, Inc. (Panama) and Nominees Associated, Inc. assigned their interests in Alderney to Management Nominees, Inc. (Belize). [Doc. 1, Exhibit 1, pgs, 1 and 39.] Defendant alleged that Edyta and her minor children, not Management Nominees, Inc. (Belize) owned Alderney. As discussed above, Edyta does not own any portion of Alderney pursuant to the alleged 2005 transfer. Accordingly, the Court finds that Management Nominees, Inc. (Belize) is the sole member of Alderney.

### 3. Conclusion

According to the Court's findings above, the Court hereby **GRANTS** the Plaintiff's *Partial Motion for Summary Judgment.* [Doc. 34.] Although titled a Motion for *Partial* Summary Judgment, the Court finds that this Order resolves the entire controversy at issue. The Court **ORDERS** that pursuant to this Order the *Plaintiff's Motion for Preliminary Injunction*

[Doc. 37], Plaintiff's requests for injunction and temporary restraining order in its Complaint, and Defendant's counterclaim [Doc. 2] are **MOOT**. Further, pursuant to 28 U.S.C. §2201, the Court **DECLARES** as follows:

1. Plaintiff Management Nominees, Inc. is the sole member of Alderney and has authority to control its operations, including the designation of any registered agent, principal place of business and/or contact person for the purposes of re-registering Alderney as an active limited liability company in accordance with Alderney's previous Articles of Organization, Operating Agreement, and in whatever form is acceptable to the Wyoming Secretary of State.[4]

2. The purported dissolution requested by Edyta in March 2013 was not properly authorized by Alderney.[5]

Plaintiff requests the Court to issue an order under Wyoming Statute section 17-29-204 that orders the Secretary of State to accept an unsigned document reinstating Alderney. The Court is permitted to order the Secretary of State to do so if a person who is required by the Wyoming LLC Act to sign a record or deliver a record to the Secretary of State for filing refuses to do so. WYO. STAT. § 17-29-204. Prior to and during this litigation, Alderney argued in good faith that it believed that Edyta was authorized to act on behalf of Alderney. The Court cannot characterize this as a refusal as discussed in Wyoming Statute section 17-29-204. Instead, the

---

[4] The Court will not order that Plaintiff Management Nominees Inc. is the only entity or person that has any right of control over the Company's affairs because it has been demonstrated that Alderney has a beneficial owner and other trustees who may be able to exercise control over Alderney's affairs.

[5] The Court cannot and will not order that the dissolution was null and void. This is a determination to be made by the Secretary of State upon production of a corrective filing with this Order attached.

Court **ORDERS** Plaintiff Management Nominees, Inc., on behalf of Defendant Alderney pursuant to Wyoming Statute section 17-29-206, to file a statement of correction to correct all filings purported to be on behalf of Alderney signed by or on behalf of Edyta with this order attached.

Dated this 10th day of February, 2015.

*Alan B. Johnson*
Alan B. Johnson
United States District Judge